IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WHITE BUFFALO CONSTRUCTION, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 99-961C<br><br>Consolidated with No. 00-415<br><br>(Senior Judge Smith)<br><br>**SUPPLEMENTAL MEMORANDUM OF WHITE BUFFALO IN RESPONSE TO THE GOVERNMENT'S RENEWED JANUARY 2004 MOTION TO DISMISS** |

Richard E. Alexander, OSB No. 69002
Attorney of Record

Of Counsel:
Charles F. Adams, OSB No. 75402

Of Attorneys for Plaintiff White Buffalo Construction, Inc.

Stoel Rives, LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Tel. (503) 224-3380
Fax. (503) 220-2480

# TABLE OF CONTENTS

Page


I. STATEMENT OF FACTS ........ 1

A. White Buffalo files complaints ........ 1

B. Evidence of government misconduct is abundant........ 2

1. The Government Prevented White Buffalo from Starting Work on Time and Did Not Extend the Contract Completion Date ........ 2

2. The Government Improperly Instructed White Buffalo to Remove Material at MP 46.2, but the Impropriety Was Not Disclosed to White Buffalo nor Corrected After the Government Discovered Its Error........ 3

3. The Government Did Not Obtain Proper Environmental Permit Extensions to Allow White Buffalo to Continue Work........ 3

4. The Government Refused to Acknowledge the Changed Condition and Safety Problems at MP 46.7........ 4

5. The Government Withheld Information About Design Changes ........ 5

6. The Government Refused to Let White Buffalo Fix the Slide at MP 47.25........ 6

7. The Government Failed to Compensate White Buffalo for Its Work........ 6

8. The Government Improperly Paid the Completion Contractor ........ 6

9. The Government Engaged in Disparate Treatment ........ 7

10. The Government Engaged in Additional Actions That Harmed White Buffalo........ 7

11. The government waives its claim of default........ 7

II. SUMMARY OF ARGUMENT........ 9

III. ARGUMENT........ 11

## TABLE OF CONTENTS

**Page**


A. This court's jurisdiction over White Buffalo's claims for lost profits was not and cannot be impaired by the government's belated declaration of convenience termination ................................ 11

1. Even when the government timely converts for convenience, not all claims which a contractor might have, including equitable adjustments, are subsumed within a termination settlement proposal................................ 11

2. A convenience termination cannot lawfully be used retroactively to deny a contractor's claim for lost anticipatory profit arising from government breaches occurring prior to the declaration of conversion..................... 12

3. Where the government breaches its implied duty of objective good faith and fair dealing, this breach must be treated like any other claim for breach of contract................. 16

4. Even declaration of a convenience termination can itself be a breach of contract ........................................................ 16

5. The only jurisdiction lacking here is that of the Contracting Officer to unilaterally convert for convenience without this court's approval ............................. 17

B. White Buffalo's eligibility to seek fees under the Equal Access to Justice Act also is not impaired by the government's belated convenience declaration ................................................................ 19

IV. CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ardco, Inc.*,
06-2 B.C.A. (CCH) ¶ 33,352 (A.G.B.C.A. 2006) .......... passim

*Carter Indus.*,
02-1 B.C.A. (CCH) ¶ 31,738 (D.O.T. B.C.A. 2002) .......... 13

*Hi-Shear Technology Corp. v. United States*,
356 F.3d 1372 (Fed. Cir. 2004) .......... 14

*James M. Ellett Construction Co. v. United States*,
93 F.3d 1537 (Fed. Cir. 1996) .......... 11, 12, 16

*Kalvar Corp. v. United States*,
543 F.2d 1298 (Ct. Cl. 1976) .......... 13

*Krygoski Constr. Co. v. United States*,
94 F.3d 1537 (Fed. Cir. 1996) .......... 13, 16

*Maxima Corp. v. United States*,
[34 CCF ¶ 75,497] 847 F.2d 1549 (Fed. Cir. 1988) .......... 18

*Poston Logging*,
00-1 B.C.A. (CCH) ¶ 30,829 (A.G.B.C.A. 2000) .......... 18

*Poston Logging*,
99-1 B.C.A. (CCH) ¶ 30,188 (A.G.B.C.A. 1998) .......... 18

*Rice Services, Ltd. v. United States*,
405 F.3d 1017 (Fed. Cir. 2005) .......... 19

*Rumsfeld v. Applied Cos.*,
325 F.3d 1328 (Fed. Cir. 2003) .......... 14

*Salsbury Indus. v. United States*,
905 F.2d 1518, 1521 (Fed. Cir. 1990) .......... 13

# TABLE OF AUTHORITIES

**Page**

*T & M Distribs., Inc. v. United States*,
185 F.3d 1279 (Fed. Cir. 1999) .................... 13

*T&M Distributors*,
01-2 B.C.A. (CCH) ¶ 31,442 (A.G.B.C.A. 2001) .................... 18

*Tecom, Inc. v. United States*,
66 Fed. Cl. 736 (2005) .................... 16

*Torncello v. United States*,
681 F.2d 756 (Ct. Cl. 1982) .................... 13

*Universal Fidelity LP v. United States*,
70 Fed. Cl. 310 (2006) .................... 20

The government argues that this court no longer has jurisdiction for two reasons: first, that in January 2004, the government unilaterally converted the default termination to one of convenience and second, that the government evidently will be issuing in 2007 a unilateral determination of the settlement amount. In the government's view, these events require dismissal of the currently pending case and require that White Buffalo initiate an entirely new appeal, addressed only to challenging the expected unilateral settlement determination. The government's position is wrong.

As detailed below, this court's existing jurisdiction was not, and cannot lawfully be, impaired by the government's 2004 convenience termination nor by the government's expected 2007 unilateral settlement determination.

## I. STATEMENT OF FACTS

### A. White Buffalo files complaints

In November 1999, White Buffalo filed with this court its complaint challenging the contracting officer's December 3, 1998 termination for default of Federal Highway Administration ("FHA") contract No. DTFH70-98-C-0027 ("the Contract"). The complaint challenged not only the default termination but also pre-default acts by FHA that interfered with White Buffalo's work. The relief sought included extensions of time and an equitable adjustment, conversion of

termination to one for convenience, and gave notice that White Buffalo ultimately would seek attorneys' fees under the Equal Access to Justice Act ("EAJA"). On April 20, 2000, the Contracting Officer additionally issued a final decision imposing liquidated damages upon White Buffalo. White Buffalo filed on July 13, 2000, under Case No. 00-4156, a complaint challenging that decision. (Complaint, Case No. 00-4156). This second complaint expressly referenced the complaint in No. 99-961-C and sought consolidation which was ordered.

## B. Evidence of government misconduct is abundant

In November 2002, White Buffalo filed with the court "Plaintiff's Expert Reports". Those reports document White Buffalo's contentions that the original work, and in particular the design and specifications for certain rock excavation, was improperly designed from the outset, interfering with White Buffalo's ability to perform. The reports also documented that the government materially redesigned the work for the successor-contractor, Tidewater. Finally, the reports demonstrated that the government had paid Tidewater, and made charges against White Buffalo's bond, for rock excavation and removal which was in fact never performed by Tidewater.

### 1. The Government Prevented White Buffalo from Starting Work on Time and Did Not Extend the Contract Completion Date

From the very beginning, the government failed to cooperate with White Buffalo. Specifically, the government refused to allow White Buffalo to commence work

until September 15, 1998, then failed to provide required additional contract time due White Buffalo because of the late notice to proceed.

Due to the failure of the government to issue the notice to proceed on September 1, 1998, White Buffalo lost 25 percent of its work window for "wetted perimeter" work at MP 46.2. The days not used were dry summer days that were essential to completing the subgrade work on FDR 33 before both the onset of the heavy rain season in late October and the first interim completion date of January 23, 1999.

**2. The Government Improperly Instructed White Buffalo to Remove Material at MP 46.2, but the Impropriety Was Not Disclosed to White Buffalo nor Corrected After the Government Discovered Its Error**

The government then concealed from White Buffalo that the government had discovered that the "excess" material it had directed be removed from MP 46.2 was actually needed at that site to complete the fill as shown in the drawings and as previously argued by White Buffalo.

**3. The Government Did Not Obtain Proper Environmental Permit Extensions to Allow White Buffalo to Continue Work**

Next, the government concealed from White Buffalo that it had decided not to seek any extension from the permitting agencies to work in the "wetted perimeter." The government misled White Buffalo by informing it that the permitting agencies had *refused* to grant any extension. White Buffalo then directly approached the permitting agencies and obtained permission from them to *continue work.*

Contrary to the permit's language and customary practice, the Government restricted White Buffalo's work in the stream area. FHWA used the unusual term "wetted perimeter" of any stream to indicate areas that would be subject to the restrictions of the permit in the contract, even though the permit, the permitting agencies, and FHA personnel who worked on obtaining the permits use the term "in-water work." When asked, the government was unable to supply White Buffalo with any clear definition of "wetted perimeter." However, in practice, the government restricted White Buffalo's operations in any area that the government arbitrarily determined could be reached by high water.

### 4. The Government Refused to Acknowledge the Changed Condition and Safety Problems at MP 46.7

The government also unreasonably refused to address changed conditions at FDR 33, MP 46.7, again violating its duty of good-faith cooperation. The government would not allow White Buffalo to correct the large amount of unstable overburden at the rock cut at MP 46.7, stating that another contractor would do the work after White Buffalo's contract was over. Just before being terminated, White Buffalo ceased all work at MP 46.7 and the adjacent work below because of safety concerns.

As soon, however, as White Buffalo was terminated, the government had Kerr Contractors start removal of the slide. *Within a week*, a United States Forest Service geologist met with FHWA and determined that conditions were not as

assumed in the FHWA design and that the area was unsafe. The USFS geologist requested that FHWA cease work and prepare a redesign for the MP 46.7 site.

**5. The Government Withheld Information About Design Changes**

FHWA personnel, including the CO, told White Buffalo, ICW (the surety), and the completion contract bidders that there would be no redesigns or changes to the contract and that the work would be completed as per the White Buffalo contract. Immediately after terminating White Buffalo, the government essentially redesigned the entire project. It also paid the completion contractor to correct the changed condition at MP 46.7, even though these costs had been included in the completion contractor bid to White Buffalo's surety, as a separate bid item based on the CO's letter.

After White Buffalo filed an action under the Freedom of Information Act ("FOIA"), the redesign for MP 46.7 was eventually provided, and FHWA paid White Buffalo's legal costs for the action. White Buffalo also later learned through discovery that there were additional redesigns for several other sites that were not provided in the earlier FOIA request. The FOIA officer and others at FHWA withheld these documents from White Buffalo despite repeated requests and FHWA's own FOIA policy.

### 6. The Government Refused to Let White Buffalo Fix the Slide at MP 47.25

FHWA refused to address the small slump by the front access gate at MP 47.25, which occurred because of the heavy rains and the oversteep design. The government directed that no work was to be done on this slide, and the slide continued to grow until White Buffalo was terminated approximately 20 days later. Kerr Contractors arrived on the project and, immediately after White Buffalo was terminated, was required to start emergency work on this slide. This work was performed at substantial expense to White Buffalo.

### 7. The Government Failed to Compensate White Buffalo for Its Work

FHWA failed to make any payments to White Buffalo for its work before termination (a period of four months). This pay estimate failed to compensate White Buffalo for items of work and quantities of work that were accepted by FHWA before termination. It also failed to properly compensate White Buffalo for significant quantities of extra or additional work, some of which was covered by contract modification.

### 8. The Government Improperly Paid the Completion Contractor

FHWA paid Completion Contractor Tidewater for substantial work that was never performed. One example is work certified and paid for at MP 46.7—a survey commissioned by White Buffalo after project completion showed this work had never been performed. Moreover, both the completion contractor and FHWA

personnel certified the work and the quantities for payment. This resulted in substantial additional and unnecessary cost to White Buffalo and its surety. FHWA was previously notified of this, and a copy of the survey report has been provided.

**9. The Government Engaged in Disparate Treatment**

FHWA relaxed environmental restrictions for the completion contractor, which materially and substantially changed and enlarged the window in which the work could be prosecuted in 1999. For example, FHWA conformed its restriction of stream work from the "wetted perimeter," to "in-water work," matching what the permit actually required.

**10. The Government Engaged in Additional Actions That Harmed White Buffalo**

FHWA certified and paid Completion Contractor Tidewater for work that was performed by White Buffalo before termination. White Buffalo and ICW were deprived of legitimate earnings and incurred illegitimate and unnecessary expenses in the course of the completion contract due to the actions of FHWA.

**11. The government waives its claim of default**

On January 22, 2004, the court cancelled the trial set for March 1 through March 13, 2004 in the consolidated action. (Order of January 29, 2004.) This resulted from the government's announcing on January 15, 2004 that it was waiving the default and converting the December 1998 termination to one for the

government's convenience. After announcing its intentions, the government filed a Motion to Dismiss. In relevant part, the motion stated that "[t]he January 14, 2004 decision provides *the remedy* sought in those actions and renders plaintiff's claims moot." (Emphasis added.)

The statement is mistaken in implying that only one remedy was sought. Apart from seeking remission of liquidated damages and conversion of the default termination to one of convenience, White Buffalo also was seeking an equitable adjustment and extensions of time, neither of which was addressed in the government's January 14, 2004 declarations.

Additionally, the government's motion acknowledged the following:

> In addition, plaintiff intends to file a request for cost and attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, following the dismissal of these actions. Counsel for plaintiff has also informed counsel for the United States that White Buffalo intends to reserve whatever rights, if any, it has to claim lost profits on uncompleted work and other damages at the time it submits its termination for convenience cost proposal.

(Motion to Dismiss at 3.)

In response, White Buffalo first noted that "[a]s the government's own motion evidences, White Buffalo consented to foregoing a full trial on the merits *only upon* the Justice Department's reciprocal consent that White Buffalo's [sic] was reserving its claims to fees under EAJA and to seek on remand lost profits on

uncompleted work. (Emphasis added.) (Response to Government's Motion to Dismiss at 14.) White Buffalo additionally made clear that its "quantum claim include[es] its claim to profits lost on work not performed as an element of common law damages for breach." (*Id.* at 6.)

As of March 30, 2007, the Contracting Officer *still* has never addressed on the merits White Buffalo's claim to lost profits arising from government breaches prior to default. This government's conduct occurred during, continued through its wrongful action in addressing White Buffalo's FOIA request in the initial default, and later from an attempt to eliminate the government's liability for lost profits (arising from the government's prior conduct) by the device of converting the default to one for convenience.

## II. SUMMARY OF ARGUMENT

For several independently sufficient reasons, the government's belated 2004 eve-of-trial conversion of the default to one of convenience, and its apparently impending 2007 unilateral settlement determination, do not, and lawfully cannot, (i) moot the proceedings (ii) nor support dismissal of White Buffalo's cases, nor (iii) prevent White Buffalo from hereinafter seeking attorney fees under EAJA. As a matter of law, even a timely termination for convenience does not eliminate pre-existing claims of a contractor. In particular, a convenience termination does not and cannot retroactively cut off a contractor's pre-existing claims seeking profits

lost as a result of earlier government breaches during the contractor's period of performance of affirmative government duties or of the government's implied objection to perform fairly and in objective good faith.

Additionally, a convenience declaration can *itself* be a breach of convenience, exposing the government to common law contract damages, when the declaration itself is an abuse of discretion or an act of subjective bad faith. Also, when the government announced it decision to convert in January 2004, this case already had been pending before this court since 1999 and was scheduled for trial only a few weeks away (March 2004). In those circumstances, effectuation of the government's decision to convert requires approval of this court.

The government's 2004 conversion declaration also does not, and cannot, preempt the right of White Buffalo to later seek attorneys fees under EAJA. Once this court finds, as White Buffalo believes it will, that the government was in breach both prior to and through its December 1998 default declaration, and additionally through the 2004 convenience declaration itself, White Buffalo will then be a prevailing party. At that time, the burden will shift to the government to prove under EAJA that its abuse of White Buffalo was substantially justified.

## III. ARGUMENT

### A. This court's jurisdiction over White Buffalo's claims for lost profits was not and cannot be impaired by the government's belated declaration of convenience termination.

#### 1. Even when the government timely converts for convenience, not all claims which a contractor might have, including equitable adjustments, are subsumed within a termination settlement proposal.

In *James M. Ellett Construction Co. v. United States*, 93 F.3d 1537 (Fed. Cir. 1996), a contractor sought recovery for extra work following a termination of its contract for convenience. As is the case here, a dispute arose over whether the Court even had jurisdiction to proceed in light of the convenience termination. The Federal Circuit explained:

> Ellett's claim, read as a whole, was submitted for the purpose of obtaining a contracting officer's decision, a request for which was implicit. In the context of a termination for convenience, however, the question is whether Ellett was permitted to submit a claim independently of its termination settlement proposal.
>
> The government argues that when it terminates a contract for convenience, all claims a contractor might have, including equitable adjustments, are subsumed within the termination settlement proposal. *Ellett*, on the other hand, argues that *there is no authority in the CDA or the FAR "for simply eliminating valid contractor claims by terminating the contract" We agree with Ellett.*

*Id.* at 1546 (emphasis added).

> Ellett was entitled to submit a claim for the increased costs it incurred due to contract changes the government made on the work it performed, notwithstanding its

> termination settlement proposal. It submitted a claim for such costs, which was either constructively denied in the contracting officer's settlement determination or deemed denied because the contracting officer did not directly address the merits. *Either way, the trial court had jurisdiction.*

*Id.* at 1548 (emphasis added).

So here as well, the government's conversion of the default to one for convenience does not "simply eliminat[e] valid contractor claims." *Id.* at 1546.

**2. A convenience termination cannot lawfully be used retroactively to deny a contractor's claim for lost anticipatory profit arising from government breaches occurring prior to the declaration of conversion.**

By the time of conversion, White Buffalo had given notice that it would be seeking, on grounds of pre-default government interference and also through the default itself, profits lost on work which White Buffalo was prevented from performing. In *Ardco, Inc.*, 06-2 B.C.A. (CCH) ¶ 33,352 (A.G.B.C.A. 2006), White Buffalo claimed anticipatory profits for flight hours lost due to damage caused to the contractor's airplane by a government employee. The government sought summary judgment on grounds that a subsequent termination for convenience precluded the contractor's claim.

According to the government, the only way in which White Buffalo could secure anticipatory profits, since the contract contained a termination for convenience

clause, was to show that the government converted for convenience in bad faith or was otherwise arbitrary and capricious in terminating for convenience.

Rejecting the government's contention, the Board first observed that all of the cases on which the government relied were ones in which the *only* alleged government breach was the termination for convenience, or similar cancellation, itself. *See Krygoski Constr. Co. v. United States*, 94 F.3d 1537 (Fed. Cir. 1996); *Torncello v. United States*, 681 F.2d 756 (Ct. Cl. 1982); *Salsbury Indus. v. United States*, 905 F.2d 1518 (Fed. Cir. 1990); *Kalvar Corp. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976); *T & M Distribs., Inc. v. United States*, 185 F.3d 1279, 1284 (Fed. Cir. 1999); *Carter Indus.*, 02-1 B.C.A. (CCH) ¶ 31,738 (D.O.T. B.C.A. 2002).

The Board then concisely and clearly explained the origins and limits of a termination for convenience clause:

> In deciding this motion, we also need to comment upon what we see as an overly broad characterization by the FS. It asserts that the T for C clause has been created to avoid the Government paying anticipatory profits and seems to take the position that the clause can be used to limit damages in any breach situation. There is no question that where the Government properly uses the T for C clause, that clause provides a limitation on anticipatory profits. However, providing a damages shield for breaches of all types is not why the clause was developed, nor consistent with how it has been used. Rather, the clause was developed and has been utilized in Government contract law for taking Government actions out of the common law context, when the Government

> cancels a contract or portion thereof, that would otherwise have constituted breach in common law. The T for C clause provides that the Government has the contractual right, a right not existing in common law, to cancel a contract or part thereof, without having to take the penalty of standard breach of contract and without having to pay anticipatory profits. That is because the T for C clause specifically provides that cancellation that fits under the clause is not a breach. Since the clause makes the cancellation not a breach, then it follows that anticipatory profits could be and are excluded. The clause, however, was not intended nor is it properly used, when as here, the Government tries to use it to limit damages caused by an independent breach, which was independent of an attempt to cancel the work. The clause is not intended to cover a situation such as that here, where the Government breached by hindering the contractor's ability to perform.

*Ardco*, 06-2 B.C.A. (CCH) at 165,382.

The Board next discussed cases, including *Rumsfeld v. Applied Cos.*, 325 F.3d 1328 (Fed. Cir. 2003), and *Hi-Shear Technology Corp. v. United States*, 356 F.3d 1372 (Fed. Cir. 2004), in which the contracts contained termination for convenience clauses and the claims were for anticipatory profits lost when the government diverted work on requirements contracts to another vendor. In both *Applied* and *Hi-Shear*, the Federal Circuit made clear that the presence of the termination for convenience clause did not serve to bar anticipatory profits, if White Buffalo could show breach and damages.

Applying these Federal Circuit holdings to the government's interference with the contractor's performance by damaging the contractor's plane, and a loss of profits as a result, the Board in *Ardco* concluded:

> The cases show that anticipatory profits are available as a remedy when the Government takes work that is earmarked for the claimant contractor and diverts it to another source. That is notwithstanding the fact that those contracts contained a T for C clause and notwithstanding the fact that the Appellant was not required to show bad faith on the part of the Government. While we acknowledge that there is a factual difference in those cases from the one before us, there is also a similarity, in that the work for which White Buffalo sought anticipatory profits was work that had been made non-available because of an un-excused Government action, in those cases, conscious diversion of the work [and here, hindrance of the contractor's work by damaging its plane].
>
> The common law measure of damages in the event of breach is that a contractor is entitled to be placed in as good a position as it would have, had the breach not been committed. That would include anticipatory profits. *Northern Helix Co.v. United States,* [21 CCF ¶ 84,304] 524 F.2d 707, 207 Cl. Ct. 862 (1975). The FS has provided no basis for us to not use that measure.

*Ardco*, 06-2 B.C.A. (CCH) at 165,383-84.

So too here, FHA's convenience termination cannot, and does not, shield FHA from liability for profits lost as a result of government breaches occurring prior to the declaration of a convenience termination.

**3. Where the government breaches its implied duty of objective good faith and fair dealing, this breach must be treated like any other claim for breach of contract.**

No presumption of good faith attaches where the claim is that, apart from and prior to a convenience termination, the government breached its implied duty of objective good faith and fair dealing. *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 757-73 (2005). And, because this breach must be treated like any other claim, it too is not and cannot be extinguished by a retroactive conversion of a default termination to one of convenience. *Ardco*, 06-2 B.C.A. (CCH) ¶ 33,352; *Ellett*, 93 F.3d 1537.

**4. Even declaration of a convenience termination can *itself* be a breach of contract.**

Where the *only* act challenged is the act of declaring a contract to be terminated for convenience (and here, *prior acts* also are challenged), a rebuttable presumption applies that the Contracting Officer acted in subjective good faith in making that convenience declaration. Even then, however, "[w]hen tainted by bad faith or an abuse of contracting discretion, a termination for convenience causes a contract breach." *Krygoski,* 94 F.3d at 1541. Consequently, whether the government's 2004 January declaration of conversion is *itself* a breach also is a live issue, apart from and in addition to the government's liability for breach arising from the government's pre-default interference and from the default termination itself, where no presumption of good faith attaches at all. *Tecom*, 66 Fed. Cl. at 757-73.

If the court finds that the government's 2004 convenience declaration was undertaken for the purpose of seeking to eliminate the government's liability arising from its prior misconduct, then the 2004 declaration is itself an actionable breach of contract.

**5. The only jurisdiction lacking here is that of the Contracting Officer to unilaterally convert for convenience without this court's approval.**

The government announced its decision to terminate here only *after* this case already was pending before the Court and had been set for trial. As set forth in White Buffalo's earlier opposition to the government's motion to dismiss, the shift of jurisdiction to this Court deprived the Contracting Officer of authority to unilaterally strip White Buffalo of its claims, or to obliterate this Court's jurisdiction. In short, once this case was pending before this Court, the contracting officer no longer had authority to terminate for convenience unilaterally nor to deprive this court of jurisdiction. Instead, precisely as has occurred here, jurisdiction remained exclusively in this Court to consider White Buffalo's initial claims and, later, its claim in the wake of the government's 2004 waiver of the default, to a proper award for those amounts covered by convenience termination standards.

Additionally, by the time the government announced its decision to convert, the original contract had been fully performed by successor contractor Tidewater.

In *T&M Distributors*, 01-2 B.C.A. (CCH) ¶ 31,442 (A.G.B.C.A. 2001), addressed the retroactive use of the termination for convenience clause and stated:

> We do not accept the Government's effort to limit appellant's recovery to costs incurred plus reasonable profit by retroactive application of the theory of a constructive termination for convenience. [Citation omitted.] The diversion is not remediable under the termination for convenience clause in a contract after the contract has been performed. In *Ace-Federal Reporters, Inc. v. Barram*, [44 CCF ¶ 77,690] 226 F.3d 1329, 1333-34 (Fed. Cir. 2000), where there was breach of a requirements contract for reporting services, the Court recently stated:
>
> "'No decision has upheld retroactive application of a termination for convenience clause to a contract that had been fully performed in accordance with its terms.' *Maxima Corp. v. United States*, [34 CCF ¶ 75,497] 847 F.2d 1549, 1557 (Fed. Cir. 1988). We see no reason in law or logic to impose a retroactive constructive termination for convenience here.'"

*Id.* at 155,281; *accord Poston Logging*, 99-1 B.C.A. (CCH) ¶ 30,188 (A.G.B.C.A. 1998); *Poston Logging*, 00-1 B.C.A. (CCH) ¶ 30,829 (A.G.B.C.A. 2000).

With respect to White Buffalo, we have, as was the case in *Poston*, *T&M*, and *Maxima*, the attempted use of the termination for convenience clause after the contract has been fully performed. *Accord Ardco*, 06-2 B.C.A. (CCH) ¶ 33,352. And as was held in those cases, a retroactive termination for convenience issued after contract completion is not within the unilateral authority of the government to

enforce. Instead, it is up to the court to decide whether or not to effectuate a convenience termination.

**B. White Buffalo's eligibility to seek fees under the Equal Access to Justice Act also is not impaired by the government's belated convenience declaration.**

The purpose of the EAJA is to compensate (at least partially) claimants when the government has acted unreasonably. Here, the government waited until the last minute to announce that it was waiving the default and converting the termination to one for convenience. By that time, the damage had been done to White Buffalo. The government cannot, by converting a termination for default to a termination for convenience on the eve of trial, deprive a claimant of its EAJA remedy for prior acts by the government.

The government's belated convenience declaration does not and cannot moot White Buffalo's eligibility to petition for an award of fees under EAJA. Under *Rice Services, Ltd. v. United States*, 405 F.3d 1017, 1025 (Fed. Cir. 2005), "an EAJA applicant must show that it obtained an enforceable judgment on the merits or a court-ordered consent decree that materially altered the legal relationship between the parties, or the equivalent of either of those." As set forth above, the government's convenience declaration leaves unaffected White Buffalo's claims for anticipatory profits arising from government hindrance during contract

performance and from the default termination. Also to be litigated is whether the convenience declaration was itself improper as an abuse of discretion.

Once this court finds, and White Buffalo believes it will, that the government was in breach, White Buffalo will then be the "prevailing party". White Buffalo also believes that the government will not be able to meet its EAJA burden of proving "substantial justification" for its rejection of White Buffalo's claims.

With respect to EAJA, the government's belated declaration of convenience here reinforces the concerns recently expressed by this very court in a bid protest case. As Judge Hodges explained in *Universal Fidelity LP v. United States*, 70 Fed. Cl. 310, 316 (2006):

> We feel strongly that to deny Universal attorney's fees under the circumstances presented would impart to the defendant an undeserved advantage in bid protest litigation. Such a ruling would allow the Government to issue a solicitation that it knows may be subject to legal challenge, deny an agency-level protest, await litigation in the Court of Federal Claims, allow plaintiff to incur substantial costs in arguing its position, and then, at the eleventh-hour cancel the offending solicitation to avoid having to pay plaintiff's expenses arising out of a lawsuit designed to bring the Government's actionable conduct to the court's attention. In short, such a scenario depicts the facts of our case.

(Footnote omitted.)

The concerns expressed in *Universal Fidelity* apply equally here.

## IV. CONCLUSION

The government's motion to dismiss must be denied. This court should: (1) conduct a hearing by way of consolidation or amendment to the complaint for consideration on the claims of White Buffalo for lost profits and for proper compensation as to those items encompassed within a convenience termination, and (2) after judgment, consider the claim of White Buffalo for attorney fees under EAJA.

DATED: March 30, 2007.

STOEL RIVES, LLP

Richard E. Alexander
by Charles F. Adams

Richard E. Alexander, OSB No. 69002
Attorney of Record

Of Counsel:
Charles F. Adams, OSB No. 75402

Of Attorneys for Plaintiff White Buffalo Construction, Inc.

Stoel Rives, LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Tel. (503) 224-3380
Fax. (503) 220-2480

## CERTIFICATE OF FILING

I hereby certify that a copy of the foregoing **Supplemental Memorandum of White Buffalo in Response to the Government's Renewed January 2004 Motion to Dismiss** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED: March 30, 2007.

STOEL RIVES LLP

Richard E. Alexander
by Charles F. Adams

Richard E. Alexander, OSB No. 69002
Attorney of Record

Of Counsel:
Charles F. Adams, OSB No. 75402

Telephone: (503)-224-3380

Attorneys for Plaintiff