# EXHIBIT 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WHITE BUFFALO CONSTRUCTION, INC., | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 99-961C |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEPOSITION OF WILLIAM PARSONS

Taken in behalf of the Plaintiff

April 29, 2008

* * *

BE IT REMEMBERED THAT, pursuant to Federal Rules of Civil Procedure, the deposition of WILLIAM PARSONS was taken before Tamara Aufdermauer Pearce, OCSR No. 90-0199 and WCRR No. 2141, on Tuesday, April 29, 2008, commencing at the hour of 8:58 a.m., the proceedings being reported at Department of Transportation, 610 East Fifth Avenue, Vancouver, Washington.

* * *

APPEARANCES

APPEARING FOR PLAINTIFF:

STOEL RIVES

By Scott Kaplan
900 S.W. Fifth Avenue, Suite 2600
Portland, Oregon 97204
503.224.3380

APPEARING FOR DEFENDANT

UNITED STATES DEPARTMENT OF JUSTICE - CIVIL DIVISION
COMMERCIAL LITIGATION BRANCH
By Timothy McIlmail
1100 L. Street, NW
Washington, DC 20530
202.616.0342
and
US DOT FEDERAL HIGHWAY ADMINISTRATION
By Rayann Scott
610 East 5th Street
Vancouver, Washington 98660
360.619.7529

ALSO PRESENT: Jane Traffalis

that's your signature at the end.

A. That is my signature.

Q. And is what we've marked as Exhibit 19 a copy of the Contracting Officer's Decision that you issued on January 15th, 2004?

A. Yes.

Q. How much, if any, of Exhibit 19 did you write yourself, setting aside your signature?

A. It was a collaboration of the Federal Highway Administration lawyer and myself. I believe I drafted it and had it reviewed and finalized with legal concurrence.

Q. Who is that lawyer?

A. Tim Binder.

Q. Why did you decide, if you decided, to convert the decision -- to convert the termination from default to convenience?

A. Boy, I'm trying to remember why exactly. I don't. There was a collaboration between legal counsel and myself.

Q. As you sit here today, can you tell me any of the reasons that you decided to convert the default termination to convenience?

A. I'm not recalling at this point.

Q. In your decision, Exhibit 19, can you find in the text of the decision any explanation about why the

default termination is being converted to convenience?

A. No.

Q. Tell me what you remember about the circumstances under which the convenience termination was made. Do you remember who came up with the idea?

A. Boy, I'm not remembering firsthand.

Q. What do you mean, "firsthand"?

A. As far as the factual who would have recommended it or --

Q. Would there be particular documents or pieces of paperwork around at the time that would help you remember?

A. Boy, not that I -- not that I know.

Q. Do you recall that a claim that White Buffalo made was about to go to trial in the Court of Federal Claims when the conversion decision was made?

A. No.

Q. Let me ask you about some of the language in your decision, Exhibit 19. In the second paragraph, last sentence, there's a statement, "The termination constitutes a complete termination of the contract."

What did you mean by that?

A. Standard statement in a termination, whether it's complete or partial. There was no partial termination associated with the termination of this contract. It was

project had been completed, correct?
A. I don't remember when it was completed.
Q. Okay. Do you recall in January of -- I'm sorry, January of 2004, the work was completed?
A. I'm sure it was.
Q. Do you recall that the safety concern about opening the road posed by the overburden had been taken care of by January 2004?
A. I would have to assume it had to have been, yes.
Q. So how did the safety concern to opening the road posed by the overburden factor into your decision to convert from default to convenience?
A. Today I'm not recalling the link there.
Q. Logically, does it seem to you that there could be a link, given that the work had been completed?
A. I'm not seeing it readily here, no.
Q. Mr. Binder goes on to say that "I assisted the Contracting Officer in drafting a decision that met the Department of Justice request."
At the time he -- well, let me strike that and start over.
Did Mr. Binder assist you in drafting the conversion decision?
A. Apparently so.

Exhibit 4, goes on to say, "lost profits on uncompleted work due to the bad faith termination of the contract."

As of March 19, 2004, in your mind, had the termination been converted to a convenience termination?

A. I don't remember the order of sequence. I look at Exhibit 19, it was converted in January. This is March.

Q. So, at that point, you understood that the termination had been for convenience, correct?

MR. McILMAIL: Objection, leading.

A. This followed the termination conversion, so yes.

BY MR. KAPLAN: (Continuing)

Q. And so the bad faith termination that Mr. Clevenger was referring to would have been the convenience termination, correct?

MR. McILMAIL: Objection, leading, argumentive.

A. I'm not sure what Luther was referring to.

BY MR. KAPLAN: (Continuing)

Q. Mr. Clevenger goes on to say "attorneys' fees." Did you understand in March of 2004 that White Buffalo was seeking its attorneys' fees?

MR. McILMAIL: Objection, leading.

A. That's what's stated in that statement.

you understand that White Buffalo was seeking lost profits on uncompleted work due to a bad faith termination of the contract?

MR. McILMAIL: Objection, leading, mischaracterizes evidence.

A. I was aware of -- having read the list, of what was not included.

BY MR. KAPLAN: (Continuing)

Q. And -- were you done?

A. Yes.

Q. Is there anything about the language "lost profits on uncompleted work due to bad faith termination of the contract" that is unclear to you or that would have been difficult to understand?

MR. McILMAIL: Objection, compound.

A. Well, it just remained that difference of positions.

BY MR. KAPLAN: (Continuing)

Q. The difference of positions being that you understood White Buffalo was asking for lost profits and you didn't think Federal Highway Administration was required to pay them?

MR. McILMAIL: Objection, leading, compound.

THE WITNESS: Do you want me to answer?

MR. McILMAIL: Yes.

A. The difference being there was a bad faith termination versus my belief there was no bad faith termination.

BY MR. KAPLAN: (Continuing)

Q. And as of November 2004, that termination, whether bad faith or not, would have been for convenience, right?

MR. McILMAIL: Objection, leading.

A. I guess I don't understand.

BY MR. KAPLAN: (Continuing)

Q. As of November 2004, you had terminated the contract for convenience, correct?

A. Yes.

Q. Take a look at Exhibit 6, please, and let me know if you've seen that before.

A. I've not seen this document before.

Q. And this is a subset of what you just said, but there's an Appendix B, Request For Profit and Justification For Profit. Have you ever seen that before?

A. No.

Q. Have you been made aware that in August of 2007, Ms. Firestone denied White Buffalo's claim for bad faith?

A. No.

Q. Were you consulted in any decision by the FHA

C E R T I F I C A T E

I, Tamara Aufdermauer Pearce, CSR No. 90-0199, do hereby certify that WILLIAM PARSONS personally appeared before me at the time and place mentioned in the caption herein; that the witness was by me first duly sworn on oath and examined upon oral interrogatories propounded by counsel; that said examination, together with the testimony of said witness, was taken down by me in stenotype and thereafter reduced to typewriting; and that the foregoing transcript, pages 1 to 31, both inclusive, constitutes a full, true and accurate record of said examination of and testimony given by said witness, and of all other proceedings had during the taking of said deposition and of the whole thereof, to the best of my ability.

Witness my hand at Portland, Oregon, this 1st day of May, 2008.

TAMARA AUFDERMAUER PEARCE

OCSR No. 90-0199

U.S. Department of Transportation
Federal Highway Administration

WESTERN FEDERAL LANDS HIGHWAY DIVISION
610 EAST FIFTH STREET
VANCOUVER, WA 98661-3801
(360) 619-7700 FAX: (360) 619-7846

January 15, 2004

**Certified Mail - Return Receipt Requested**

Mr. Luther Clevenger
White Buffalo Construction, Inc.
6653 Shaw Highway SE
Aumsville, OR 97325

Re: OR FS ERFO 97-18(2)
Contract No. DTFH70-98-C-00027

Dear Mr. Clevenger

This is a Final Contracting Officer's Decision converting the termination for default into a termination for the convenience of the Government and accordingly releasing the one hundred thousand dollars ($100,000.00) in withheld liquidated damages and terminating the claim for an additional twelve hundred dollars ($1,200.00) previously made.[1]

Because the default termination is to be treated as a convenience termination, the effective date of this conversion is December 3, 1998, the date the prior termination for default became effective. The termination constitutes a complete termination of the contract.

White Buffalo should submit its settlement proposal in accordance with FAR Clause 52.249-2 and FAR Subpart 49.2. White Buffalo shall submit such proposal to me within six (6) months of the date of this letter.

## DECISION

The Government hereby converts the December 1, 1998 Termination for Default into a Termination for the Convenience of the Government. The effective date of the Termination remains December 3, 1998. Liquidated damages, assessed against White Buffalo are hereby rescinded. The one hundred thousand dollars of liquidated damages ($100,000.00) withheld from White Buffalo will be paid to the contractor, together with interest from December 22,

[1] The Government withheld $100,000 in liquidated damages. The Government later adjusted the amount of liquidated damages to $101,200 based on 253 days at $400 per day. Because the Government, at the time of the adjustment, no longer had funds due the contractor, the Government requested the surety to pay the additional sum of $1,200.00. The surety declined to pay this amount. This decision releases any continuing claim for the additional $1,200.00 and releases the $100,000.00 previously withheld. White Buffalo's December 21, 1999 request to the contracting officer was for the return of the $100,000.00 and did not address the additional $1,200.00 previously requested by the Government. As such the request was not required to be accompanied by a certification and in fact was not so accompanied.

EXHIBIT: 19
WIT: Parsons
Bridge City Legal

BUCKLE UP
Exhibit 6
Page 10 of 11

1999. White Buffalo shall submit a settlement proposal to me within six (6) months of the date of this letter.

This is the final decision of the Contracting Officer. This decision may be appealed to the Department of Transportation Board of Contract Appeals, 400 Seventh Street SW, Washington, D.C. 20590. If you decide to make such an appeal, you must mail or otherwise furnish written notice to the Board of Contract Appeals within 90 days from the date you receive this decision. A copy of the notice shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, should reference this decision, and identify the contract by number. With regard to appeals to the Department of Transportation Board of Contract Appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims $100,000 or less. In lieu of appealing to the Board of Contract Appeals, you may bring action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision.

Sincerely,

William L. Parsons

William L. Parsons
Contracting Officer

cc: Richard E. Alexander, Stoel Rives LLP, 900 SW Fifth Avenue, Suite 2600, Portland, OR 97204
Insurance Company of the West, 8050 SW Warm Springs Street, #140, Tualatin, OR 97062-0369
Art Hamilton, FLH Headquarters
Ronald Carmichael, WFL
Elizabeth Firestone, WFL
Robert Lale, WFL
Ricardo Suarez, WFL
Tim Binder, WFL
File

Exhibit 6
Page 11 of 11

BUCKLE UP AMERICA