APPENDIX (SUPPLEMENTAL) TO DEFENDANT’S REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT’S MOTION TO DISMISS CERTAIN CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR JUDGMENT UPON THE PLEADINGS UPON CERTAIN CLAIMS

INDEX TO APPENDIX (SUPPLEMENTAL)

PAGE(S)

Deposition of Luther Clevenger, Apr. 28, 2008.. . . . . . . . . 173

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WHITE BUFFALO CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 99-961C |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

ORIGINAL

DEPOSITION OF LUTHER CLEVENGER

Taken in behalf of the Defendant

April 28, 2008

* * *

LUTHER CLEVENGER,
having first been sworn, testified under oath as follows:

(Exhibit No. 10, Revised Notice of Deposition of White Buffalo Construction, Inc., four pages, no Bates, marked.)

EXAMINATION

BY MR. McILMAIL:

Q. This is the deposition of White Buffalo Construction, Inc., through its designee. And would you say your name, home address, and home phone number, please.

A. Luther Clevenger, C L E V E N G E R, 503.559.0540.

MR. KAPLAN: Before we get going, this is Scott Kaplan, counsel for plaintiff, and I will be leaving from time to time during the deposition, but counsel has my approval to keep going, and Mr. Clevenger, who has actually taken a deposition and has been through this before, leaves me with full confidence that the time I'm absent he can handle himself.

BY MR. McILMAIL: (Continuing)

Q. What is your phone number, home phone number, please?

A. I'll give you my cell number: 503.559.0540.

Q. Before you is Exhibit 10. Have you seen that

Q. Okay. Where in the claimed documents does White Buffalo present to the Contracting Officer a claim that the conversion or attempted conversion of the termination was in bad faith?

A. It's in the bad faith claim portion. I don't think you have to -- if you're looking for specific language, I'm not sure that it's in there, but I don't think you have to have specific language on each issue of bad faith, just that there was bad faith.

(Unidentified person enters the room.)

MR. McILMAIL: Okay. We can stop if you like.

(A recess was taken from 11:29 to 11:32.)

BY MR. McILMAIL: (Continuing)

Q. The bad faith part, is that Appendix D, the one I put in front of you that's on top of that stack, is that where you're saying the claim to the Contracting Officer was made that the conversion was in bad faith?

A. Do you want me to read it?

Q. No. First I just want an answer to the question. Is that where you say it is?

A. Yes.

Q. Is it anywhere else, aside from Appendix D?

A. I think Appendix D is part of the settlement proposals. It was in the settlement proposal.

Q. Okay. So would you point to me where in

Appendix D that claim was presented to the Contracting Officer?

A. It's not one of the examples. We list a number of examples, and it's not one of the listed examples.

Q. Does White Buffalo present to the Contracting Officer in Appendix D a claim that the conversion was in bad faith?

A. That's a legal question, but I believe that we do, yes.

Q. Which words does White Buffalo use to express that claim?

A. On page 3, the entire second paragraph.

Q. Which words in that paragraph?

A. All of them.

Q. The paragraph that starts, "As established in Tecom"?

A. Yes.

Q. And that ends with the term "lost profits" --

A. Yes.

Q. -- expresses the claim that the --

A. Um.

Q. Hold it.

-- that the conversion was done in bad faith?

A. It's part of the bad faith actions, yes.

Q. And which word in that paragraph refers to the conversion?

A. I don't think it refers specifically to the conversion. It refers to bad faith.

Q. Okay. Is there anywhere else in Appendix D where White Buffalo presents a claim to the Contracting Officer that the conversion was in bad faith?

A. I think all of the actions that we allege --

Q. I'm just simply trying to find on what page and in what paragraph the claim is expressed.

A. I don't think there's anywhere where it specifically details out the conversion as an example of bad faith.

Q. Has White Buffalo presented to the Contracting Officer a claim that the conversion was in bad faith?

A. Yes.

Q. Is that claim presented in Appendix D?

A. Yes.

Q. On what page other than page 3?

A. For any acts that were bad faith acts are included as part of the bad faith.

Q. On what page other than page 3 of Appendix D does White Buffalo present a claim that the conversion was in bad faith?

A. All of the appendix refers to all actions by

the Government that constitute bad faith for this contract.

Q. Where else in these claim -- in the claim documents does White Buffalo present a claim that the conversion was in bad faith?

A. If you're asking me if it specifically details out the conversion, I don't think it does.

Q. Well, if I wanted to show the judge where the claim that the conversion was in bad faith was presented to the Contracting Officer, what other page would I show him other than page 3 of Appendix D, among all the claim documents we have on the table?

A. I don't think we can point him to any part that specifically calls out the conversion by itself as being bad faith.

Q. Where among the claim documents is the conversion referenced at all as part of the Government's bad faith conduct?

A. I don't think so.

Q. What do you mean, you don't think so? I said "Where?"

A. I don't think that it calls out anywhere in the bad faith claim a specific reference to the conversion.

Q. Okay. Anywhere else in among the claim documents is there presented a claim that the conversion was in bad faith?

A. Not just the conversion, I don't think.
Q. The conversion at all?
A. Not that I can recall.
Q. Okay. When was Appendix D presented to the Contracting Officer?
A. Well, in our June 26th, 2007, letter, it says the Revised Settlement Proposal dated October 16th, 2006, including its Appendices A through F in form SF 1436 dated November 10th, 2006.
So, apparently, it was in the Revised Settlement Proposal, October 16th, 2006.
Q. In those claim documents, when did White Buffalo first present to the Contracting Officer the claim that FHA breached its implied obligations of good faith and fair dealing and duty to corporate in facilitating White Buffalo's performance of the contract?
A. On that date, October 16th, 2006.
Q. Is that claim -- is that claim presented somewhere other than Appendix D, among the claim documents you have there?
What I'm trying to get at, is this bad faith claim that's in the second claim for relief presented in some document that was submitted to the Contracting Officer before October 16th, 2006?
A. No, I think it's in there. It's also on that

I got -- when we filed the FOIA suit and they finally transmitted the redesigns to us, I took Mr. Toors -- Mr. Toors and Mark Heimburger from Land Mark down to look at the site. That's not until I actually got the final pay estimate for Tidewater and the survey report that I saw, in my mind, conclusive evidence that they had paid for work that hadn't been done, purported that there were no redesigns, when in fact there were redesigns.

Q. When did White Buffalo learn that the Government failed to cooperate in facilitating White Buffalo's performance of the contract?

A. Well, I thought that at the time it was going on.

Q. At what time?

A. Back in '98. I mean I thought that. It wasn't until later that I started seeing some of the documents that --

Q. How much later?

A. Probably in 2000.

Q. When did White Buffalo learn that the Government prevented it from completing the work?

A. I knew that from the -- I knew that while we were down on the project, but it's after we saw the redesigns that it became pretty abundantly clear.

Q. By "when you were down on the project," what

do you mean?

A. In '98.

Q. If you haven't already identified them, what are the other relevant facts that are referenced in response to request for admission number 4, sentence number 3?

A. I think we've covered it.

Q. Okay. Toward the end of the response to that request for admission, there's a reference to defendant's bad faith conduct. If we haven't already talked about it today, what is that bad faith conduct?

A. I think we've talked about it.

(Exhibit No. 15, Plaintiff's Response to Defendant's Request for Admissions Nos. 6-26, eight pages, no Bates, marked.)

BY MR. McILMAIL: (Continuing)

Q. Okay. On page 3, there's request for admission number 12, and in which White Buffalo admits that a portion of the $163,000 in settlement expenses was incurred researching whether the Government's auditors could require plaintiff to produce original invoices.

How much of that $163,000 was incurred in that research?

A. Counsel estimated 20 percent, and I had estimated 20 percent on our part, too.

C E R T I F I C A T E

I, Tamara Aufdermauer Pearce, CSR No. 90-0199, do hereby certify that LUTHER CLEVENGER personally appeared before me at the time and place mentioned in the caption herein; that the witness was by me first duly sworn on oath and examined upon oral interrogatories propounded by counsel; that said examination, together with the testimony of said witness, was taken down by me in stenotype and thereafter reduced to typewriting; and that the foregoing transcript, pages 1 to 148, both inclusive, constitutes a full, true and accurate record of said examination of and testimony given by said witness, and of all other proceedings had during the taking of said deposition and of the whole thereof, to the best of my ability.

Witness my hand at Portland, Oregon, this 5th day of May, 2008.

Certified Shorthand Reporter
Oregon
CSR
90-0199
Tamara Aufdermauer-Pearce

TAMARA AUFDERMAUER PEARCE

OCSR No. 90-0199

ORIGINAL

AUTHENTIC COPY
The original certified E-Transcript file was electronically signed using RealLegal technology.