IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WHITE BUFFALO CONSTRUCTION, INC., an Oregon corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | **DECLARATION OF LUTHER L. CLEVENGER IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CERTAIN CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR JUDGMENT UPON THE PLEADINGS UPON CERTAIN CLAIMS**<br><br>**No. 99-961C (Consolidated with Case Nos. 07-738C and 00-415C)**<br><br>**Senior Judge Loren A. Smith**<br><br>**Electronically Filed May 7, 2008** |

I, Luther L. Clevenger, declare:

1. I am the President of White Buffalo Construction, Inc. ("White Buffalo"). I have personal knowledge of the matters stated herein As I understand it, the government's motion is directly solely at the pleadings and, in particular, on issues related to the timeliness of White Buffalo's claims and whether the actions I filed in 1999 and 2000 are moot. Therefore, while I have a great deal of information about the merits of White Buffalo's claims, this declaration relates only to issues raised by the government's motion.

2. When White Buffalo was awarded the contract at issue in this case in 1998, it was still in lengthy and highly contentious litigation with the Forest Service. This litigation is referred to in government documents I received from the FHA and DCAA in May 2008 as the either the Salt Creek or Rim Rock litigation.

3. On January 25, 2004, the government converted its December 1, 1998 Termination for Default into a Termination for the Convenience of the Government. The conversion did not address White Buffalo's claim for an equitable adjustment and extensions of

time made in the case I filed in 1999. The government denied in its August 2007 CO decision that White Buffalo would have made a profit on that project. However, the government failed to factor into the equation White Buffalo's entitlement to an equitable adjustment based on the changed conditions and design to which I asserted entitlement in Case No. 99-961C. As appropriately calculated, White Buffalo would have made a profit in my calculation, in excess of $800,000 on the contract as issue.

4. With regard to the timeliness of White Buffalo's claims, prior to August 2007, FHA personnel, including the CO, told White Buffalo, ICW (its surety) and the completion contract bidders that there would be no redesigns or changes to the contract and that the work would be completed as per the White Buffalo contract. However, after terminating White Buffalo, the government finally admitted in its August 2007 CO decision on White Buffalo's bad-faith claim that it began working on "designing a solution" as early as 1998 and 1999 to fix its initial design errors. Prior to the August 2007 CO decision, the government denied repeatedly to me, as president of White Buffalo, that there had been design changes.

5. I did everything I reasonably could do to try to find out if the government was lying to me about design changes. I tried to find out about any design changes by making a request under FOIA. On or about January 6, 2000, I received from the FHA documents whose disclosure was compelled by a suit I brought under FOIA, *Clevenger v. U.S. Dept. of Transportation*, U.S.D.C. Oregon Civil Case No. 99-1615-AS. The documents revealed that, contrary to repeated prior FHA representations, FHA had in fact redesigned the rock cut at MP 46.7. The government by a stipulation dated May 3, 2000 was compelled to pay White Buffalo's attorneys' fees in the FOIA litigation.

6. In 2002 White Buffalo commissioned Landmark Surveying, Inc. ("Landmark") to compare the as-planned, as-designed and as-built conditions on the Forest Service road at issue in this project. The survey, forwarded to me on November 3, 2002, uncovered significant discrepancies and documented that the government made design changes for the completion contractor that it had previously denied making and that the government had improperly charged White Buffalo for work not actually performed by the completion contractor. It was only then that I understood the government has been acting in bad faith toward White Buffalo.

7. As confirmed by the Landmark Survey, FHA paid the completion contractor, Tidewater, for substantial work that was never performed or was performed by White Buffalo. One example is work certified and paid for at MP 46.7. This resulted in substantial additional and unnecessary cost to White Buffalo and its surety. FHA was previously notified of this, and a copy of the survey report was provided, but to no avail.

I hereby declare, under penalty of perjury under the laws of the United States and Oregon, that the foregoing is true and correct.

DATED: May 7, 2008.

Luther L. Clevenger

App. 190